IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-253-FL

| | | |
|---|---|---|
| FIRST PROTECTIVE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| MARK P. NOONAN and TRACI P. NOONAN, | ) ) ) | |
| Defendants. | | |

This matter is before the court upon defendants' partial motion to dismiss (DE 12), pursuant to Federal Rule of Civil Procedure 12(b)(6), and defendants' motion to dismiss or alternatively to stay this action (DE 18), pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendants' motions are granted in part and denied in part as moot, as set forth herein.

## STATEMENT OF THE CASE

Plaintiff First Protective Insurance Company ("First Protective") commenced this action December 23, 2020, seeking a declaratory judgment that defendants are not entitled to coverage under a homeowners policy issued by First Protective, due to an alleged material misrepresentation, and alternatively, defendants are not entitled to additional coverage under an endorsement in the policy. First Protective attaches to its complaint the insurance policy, architectural plans, and transcript of defendant Mark Noonan's Examination Under Oath. In addition to declaratory relief, First Protective seeks attorneys' fees and costs.

On January 26, 2021, defendants filed the instant partial motion to dismiss for failure to state a claim, seeking to dismiss First Protective's declaratory judgment claim regarding additional coverage under the policy's endorsement. In support, defendants rely upon a memorandum of law and a copy of the North Carolina Rate Bureau Homeowner's Policy Program Manual. That same day, defendant filed the instant motion under the Declaratory Judgment Act, arguing that a balancing of state and federal interests weighs in favor of dismissing this action, or alternatively, staying this action pending resolution of a related lawsuit filed on January 20, 2021, in the General Court of Justice, Superior Court Division, New Hanover County, North Carolina (Case No. 21 CVS 223), captioned <u>Mark P. Noonan and Traci P. Noonan v. Cynthia M. Gerdes and First Protective Insurance Company</u> ("state court action"). In support, defendants rely upon a memorandum of law and a copy of the complaint filed in the state court action.

First Protective responded in opposition to both motions on February 16, 2021, relying upon unpublished orders in cases <u>Nationwide Mut. Ins. Co. v. Wahome</u>, No. 5:15-CV-601-FL, 2016 WL 3093889 (E.D.N.C. June 1, 2016) and <u>Duke Energy Carolinas, LLC v. AG Ins. SA/NV</u>, No. 17 CVS 5594, 2020 WL 3047206 (N.C. Super. June 5, 2020); email correspondence between defendant Mark Noonan and Cynthia Gerdes ("Gerdes"); and a transcript of defendant Mark Noonan's Examination Under Oath. Defendants replied in support of the motions on March 1, 2021, also relying upon email correspondence between defendant Mark Noonan and Gerdes and a transcript of defendant Mark Noonan's Examination Under Oath.

### STATEMENT OF FACTS

The facts alleged in First Protective's complaint may be summarized as follows.

A.     The Policy

2

First Protective provided homeowners insurance to defendants for a property located at 1101 Merchant Lane, Carolina Beach, North Carolina ("the property"), pursuant to policy number 2775880434 ("the policy"), for the period of August 14, 2019, to August 14, 2020. (Compl. ¶ 8). The policy covers the dwelling, other structures, personal property, and loss of use. (Id.). As relevant to this action, the policy provides:

> **R. Concealment Or Fraud**
> We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
> 2. Engaged in fraudulent conduct; or
> 3. Made false statements;
> relating to this insurance.

(Policy (DE 1-1) at 29).

B. The Fire

On December 17, 2019, defendants notified First Protective of damage sustained due to a house fire on the property. (Compl ¶ 12). First Protective retained David Myers ("Myers"), Fire Division Manager for Rimkus Consulting Group, and Bobby R. Thompson ("Thompson"), the Carolina Beach Fire Department Fire Marshall, to perform a cause and origin analysis of the fire. (Id. ¶¶ 25-26). According to First Protective, the fire originated in an outdoor kitchen area, where a Wilmington gas grill ("the grill") had been installed into wood framing. (Id. ¶¶ 19-20). First Protective alleges that the installation of the grill within wood framing violated the grill's owner's manual, as well as local building codes. (Id. ¶ 21).

During the post-claim investigation, defendant Mark Noonan allegedly told Myers and Thompson that he built the wood framing around the grill and installed the grill himself. (Id. ¶ 27). Subsequently, however, defendant Mark Noonan allegedly told Myers and Thompson that Fentriss

Watts, the general contractor that constructed the house, or Fentriss Watts's subcontractor installed the framing and grill. (Id. ¶¶ 18, 28).[1] As a result, Myers and Thompson questioned Fentriss Watts and reviewed the architectural plans for the house. (Id. ¶ 29). First Protective alleges that the architectural plans do not depict the framing or the grill, and Fentriss Watts denied any involvement in installing them. (Id. ¶ 33).

C. The Endorsement

Allegedly due to request of defendants and defendants' insurance agent, the policy imposes a liability limit under Coverage A of $459,00.00. (Id. ¶ 9). The policy also includes a Specified Additional Amount of Insurance Endorsement ("the endorsement"), which provides additional coverage, at an amount of 25 percent of the liability limit in Coverage A, subject to certain terms. (Id. ¶¶ 9,10). In particular, the endorsement states:

> To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:
> A. If you have:
>   1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:
>      a. The property evaluations we make; and
>      b. Any increases in inflation; and
>   2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;
> the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

(Policy (DE 1-1) at 50).

During the post-claim investigation, First Protective determined that the replacement cost of property equaled $551,340.28, which exceeds the liability limit under Coverage A by approximately

---

[1] Defendant Mark Noonan also allegedly testified that the installation of the grill fell within the scope of the work performed by Fentriss Watts. (Compl. ¶ 31).

4

Case 7:20-cv-00253-FL   Document 23   Filed 08/16/21   Page 4 of 9

$100,000.00. (Compl. ¶ 13). Moreover, at the inception of the policy, First Protective valued the replacement cost of the property at $503,108.64, which also exceeds the $459,000.00 liability limit in Coverage A. (Id. ¶¶ 47-48). Defendants allegedly paid more than $459,000.00 for the construction for the residence, and at all times relevant to the instant action, defendants allegedly knew that the value of the property exceeded the liability amount under Coverage A. (Id. ¶¶ 49-50). First Protective alleges that neither defendants, nor defendants' agent, informed First Protective that the value of the property exceded the face amount of Coverage A. (Id. ¶ 51).

## COURT'S DISCUSSION

In relevant part, the Declaratory Judgment Act provides that the court "may declare the rights and other legal relations of [the parties]." 28 U.S.C. § 2201(a). Whether a district court should exercise its jurisdiction to hear a declaratory judgment action is a matter within the court's discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 282–83 (1995).

When there is a related state court proceeding pending, "a court considering a declaratory judgment action should specifically consider whether the controversy 'can better be settled in the proceeding pending in the state court.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996) (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942)). "This consideration should be guided by a number of factors, including the nature and scope of the state proceeding, and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . .'" Id. Additionally, in cases where there are parallel state proceedings, the court weighs the following four factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

5

Coffey, 368 F.3d at 412 (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir.1994)). Courts are not to "treat the factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case." VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013) (citations omitted).

For instance, in Poston, an insurance company sought a declaratory judgment that the insureds' policy was void due to their fraudulent misrepresentations. 88 F.2d at 256. Approximately two months after the insurance company commenced the federal action, the insureds initiated a state court action seeking enforcement of the policy and damages against the insurance company, and asserting related claims against the insurance agent. Id. Upon the insureds' motion, the district court concluded that "it should decline jurisdiction over this action in deference to the state court action." Id.

On appeal, the United States Court of Appeals for the Fourth Circuit concluded that many of the applicable factors "lead to no obvious conclusion." Id. at 258. However, it found the second factor to be "particularly salient", explaining:

> the state court action contains a defendant and a number of issues not present in the federal action. The [insureds] have asserted claims against Centennial insurance agent Jack Gottlieb, based on his representations about the insurance policy and an alleged negligent failure to procure the insurance requested. Thus, although issuance of a declaratory judgment would settle part of the controversy between the [insureds] and [the insurance company], it certainly would not settle the entire matter. The state litigation, on the other hand, could resolve all issues, and we note that significant discovery has already been undertaken in that action. Concern for efficiency and judicial economy clearly support the district court's decision.

Id. Accordingly, the Fourth Circuit held that the district court did not abuse its discretion in declining to exercise jurisdiction.

Here, as in Poston, First Protective instituted a declaratory judgment action, seeking declarations regarding insurance coverage, and shortly thereafter, defendants initiated the state court

6

action, asserting a breach of contract claim against First Protective and related claims against the insurance agent, Gerdes. Therefore, the pending state court action addresses issues raised herein and involves the parties to the instant action, while also addressing supplemental issues and involving additional parties not present here. Although the instant action could resolve some of the issues between the parties, "it certainly would not settle the entire matter. The state litigation, on the other hand, could resolve all issues." Poston, 88 F.2d at 258. This factor weighs heavily in favor of declining to exercise jurisdiction.

Also as in Poston, the remaining factors "lead to no obvious conclusion." Id. For example, regarding the first factor, North Carolina law applies to the policy, see N.C. Gen. Stat. § 58-3-1, and "the most authoritative voice [to] speak on the meaning of applicable law . . . belongs to the state courts when state law controls the resolution of the case." Mitcheson v. Harris, 955 F.2d 235, 237 (4th Cir. 1992). On the other hand, however, the Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage." Nautilus, 15 F.3d at 375–76; see Poston, 88 F.2d at 258 ("[A]lthough only state law is at issue, the relevant state law is not problematic or difficult to apply, which weakens somewhat the state's interest in having these issues decided in state court."); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998) ("Although the case is entirely one of state law, the issues involved are standard ones of agency and contract interpretation. A federal court would be unlikely to break new ground or be faced with novel issues of state interest.").

Under the third factor, excessive entanglement, there are overlapping issues of fact and law, since defendants assert a breach of contract claim against First Protective in state court. (See State Court Complaint (DE 18-1) at 1, 14-15). As a result, the state court will have to interpret the policy, and its coverage, to determine whether First Protective breached the same. Such coverage and

7

interpretation issues overlap with the legal issues asserted herein, raising the possibility of entanglement. Kapiloff, 155 F.3d at 494 ("Since both actions raised the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts was a genuine possibility."). Of course, the potential preclusive effect of this suit is unclear, where it is currently unknown if First Protective will succeed on the merits.

Finally, regarding the fourth factor, procedural fencing, defendants argue that First Protective engaged in improper gamesmanship because it commenced this declaratory judgment action before communicating its coverage position to defendants. (Mem. (DE 11) at 9). However, First Protective argues that its counsel "made it clear to defendants' attorney that an action was forthcoming to address the remaining coverage issues." (Mem. (DE 19) at 9). Given the parties' factual dispute, the court "decline[s] to place undue significance on the race to the courthouse door." Poston, 88 F.2d at 258.

After weighing the relevant factors with due flexibility, the court finds that they weigh in favor of discretionary abstention. First Protective argues the court should retain jurisdiction, relying upon Wahome and Coffey. Those cases are inapposite, however, because the insurance companies were not parties to the respective state court actions, which involved tort claims rather than insurance coverage issues. See Coffey, 368 F.3d at 414 ("[T]o defer to the state court tort case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) Penn–America is not a party to the state case."); Wahome, 2016 WL 3093889, at *2 ("[H]owever, plaintiff is not a party in the underlying state action, and there is no indication in the record that the coverage issue also is pending before the state court."). Here, in contrast, First Protective is a party to the state court action, and the insureds

8

have asserted a breach of contract claim against it, which raises coverage and policy interpretation issues. (See State Court Complaint (DE 18-1) at 1, 14-15).

For all these reasons, the court grants defendants' alternative motion to stay this action. Poston, 88 F.3d at 257, n.1 ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." (quoting Wilton, 515 U.S. at 289, n.1)). Where the court stays this action, it terminates as moot defendants' partial motion to dismiss. (See Mot. (DE 12) at 1) ("Defendants request that the Court refrain consideration of [the partial motion to dismiss] if the Court grants Defendants' Motion to Dismiss pursuant to 28 U.S.C. § 2201, filed with the Court earlier this day.").

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss or to stay this action under the Declaratory Judgment Act (DE 18) is GRANTED. This action is STAYED pending outcome of the state court action. The parties are DIRECTED to file jointly a report indicating the status of the state court litigation, every **180 days**, or upon conclusion of the state court litigation, whichever is sooner. Defendants' partial motion to dismiss for failure to state a claim (DE 12) is terminated as moot.

SO ORDERED, this the 16th day of August, 2021.

LOUISE W. FLANAGAN
United States District Judge